IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

MICHAEL EDEN and
ELIZABETH A. EDEN,

Plaintiffs,

v. CIVIL ACTION NO. 1:22-00236

JOSEPH CAR TRANSPORT, LLC, et al.,

Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is the defendant KGPCO, Inc.'s motion to dismiss. ECF No. 33. For the reasons explained below, the motion is **DENIED**.

## I. Background[1]

Plaintiff Michael Eden worked for defendant KGPCO, Inc. ("KGPCO"), a telecommunications network developer and supply chain company. See ECF No. 1 at ¶¶ 6, 8. KGPCO contracted with Frontier Communications[2] ("Frontier"), a fiber optic internet

[1] This factual background is based on plaintiffs' allegations, which the court accepts as true solely for purposes of this motion. See, e.g., Merriweather v. Kijakazi, No. 1:21-00391, 2022 WL 4813305, at *1 (S.D.W. Va. Sept. 30, 2022).

[2] The Complaint names as defendants Frontier Communications Corporate Services, Inc., Citizens Telecommunications Company of West Virginia d/b/a Frontier Communications of West Virginia, and Frontier Communications Corporation and refers to them collectively as "Frontier Defendants." ECF No. 1 at ¶ 4.

service provider, for projects that required Mr. Eden to order, stock, and unload fiber-optic network development supplies at Frontier's Bluefield, West Virginia facility. See id. at ¶¶ 8, 23.

On June 18, 2020, Mr. Eden was on site at Frontier's Bluefield facility fielding shipments when an unexpected delivery of a 5,000-foot, 2,200-pound reel of innerduct for fiber optic cable conduits arrived on a flatbed trailer. See id. at ¶¶ 23-24. The delivery driver's shipment contract required him to schedule drop-offs beforehand, but he failed to do so on this occasion. See id. at ¶ 20. Mr. Eden had recently complained to his manager at KGPCO about this specific driver arriving without scheduling his deliveries. See id. at ¶ 21. Even so, Mr. Eden helped the driver unload the shipment because of a Frontier policy that required employees to accept shipments under any circumstances. See id. at ¶ 27.

Mr. Eden would have normally used Frontier's forklift to unload the large reel, but the forklift was under repair at the time. See id. at ¶ 25. Instead, at the driver's insistence, Mr. Eden stood beside the trailer and guided the reel along as the driver tried to roll it down a ramp connected to the trailer. See id. at ¶ 29. The ramp, however, suddenly collapsed, causing the reel to fall and crush Mr. Eden under its significant weight. See id. As a result, he suffered serious,

permanent injuries that required major surgeries. See id. at ¶¶ 31-32.

Mr. Eden alleges a deliberate intent claim against KGPCO under West Virginia Code § 23-4-2(d)(2)(B) (2023). He sued the delivery driver, the delivery driver's company, Frontier, and the transportation company that arranged the delivery, all for negligence.[3] See id. at Counts I-III. His wife, Elizabeth Eden, alleges a related loss of consortium claim against the defendants. See id. at Count V.

In addition to the factual allegations recounted above, Mr. Eden's complaint incorporates by reference a verified statement of James D. McIntosh, an expert in workplace safety. See ECF No. 45, Ex. A. Within the verified statement, Mr. McIntosh explains, among other things, (1) that KGPCO knew that Frontier's forklift was out of order, (2) that KGPCO knew that Frontier would nonetheless require Mr. Eden to unload all deliveries, (3) that this created an unsafe working condition at Frontier's facility, and (4) that these circumstances violated a federal regulation requiring employers to instruct employees on risk avoidance. See id.

---

[3] Mr. Eden also alleges a deliberate intent claim against Frontier in the alternative to his negligence claim against it. That deliberate intent claim is not at issue in this opinion.

KGPCO asks this court to dismiss Mr. Eden's deliberate intent claim against it because the claim "recites only a formulaic recitation of West Virginia's deliberate intent statute" and, therefore, fails to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 34 at 1.

**II. Legal Standard**

"The purpose of a Rule 12(b)(6) motion is to test the [legal] sufficiency of a complaint; importantly, [a Rule 12(b)(6) motion] does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Edwards v. City of Goldsboro, 178 F.3d 231, 243–44 (4th Cir. 1999) (citations and internal quotation marks omitted). A Rule 12(b)(6) defense asserts that even if all the factual allegations in a complaint are true, they remain insufficient to establish a cause of action. This court is also mindful that "[w]hether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground, not on the nature of the ground in the abstract." Jones v. Bock, 549 U.S. 199, 215 (2007).

Accordingly, Federal Rule of Civil Procedure 8(a)(2) requires that "a pleading . . . contain a 'short and plain statement of the claim showing that the pleader is entitled to

relief.'" Ashcroft v. Iqbal, 556 U.S. 662, 677—78 (2009) (citing Fed. R. Civ. P. 8(a)(2)). The purpose of Rule 8(a)(2) is to ensure that "the defendant [receives] fair notice of what the . . . claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 615 n.26 (4th Cir. 2009).

The United States Supreme Court has maintained that "[w]hile a complaint . . . does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 550 (2007) (citations and internal quotation marks omitted). The court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments." E. Shore Mkts., Inc. v. J.D. Assocs. Ltd P'ship, 213 F.3d 175, 180 (4th Cir. 2000). Courts must also take care to avoid confusing the veracity or even accuracy underlying the allegations that a plaintiff has leveled against a defendant with the allegations' likelihood of success. While "the pleading must contain something more . . . than . . . a statement of facts that merely

creates a suspicion [of] a legally cognizable right of action," 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004), "assum[ing]" of course "that all the allegations in the complaint are true (even if doubtful in fact)," Twombly, 550 U.S. at 555, it is also the case that "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." Neitzke v. Williams, 490 U.S. 319, 327 (1989). Therefore, courts must allow a well-pleaded complaint to proceed even if it is obvious "that a recovery is very remote and unlikely." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

**III. Discussion**

In this case, KGPCO undisputedly maintained workers' compensation insurance that covered workplace injuries incurred by its employees, including Mr. Eden. Generally, if an employer maintains workers' compensation insurance, the employer is immune from civil liability related to death or injury to covered employees:

> Any employer subject to this chapter who procures and continuously maintains workers' compensation insurance as required by this chapter or who elects to make direct payments of compensation as provided in this section is not liable to respond in damages at common law or by statute for the injury or death of any employee, however occurring, after so subscribing or electing, and during any period in which the employer is not in

> default and has complied fully with all other provisions of this chapter . . . .

W. Va. Code § 23-2-6 (2022). West Virginia adopted its deliberate intent scheme "to remove from the common law tort system all disputes between or among employers and employees regarding the compensation to be received for injury or death to an employee." Hunt v. Brooks Run Min. Co., LLC, 51 F.Supp.3d 627, 630 (S.D.W. Va. 2014) (citing W. Va. Code § 23-4-2(d)(1) (2005)). But, an employer loses the benefit of workers' compensation immunity if "the employer or person against whom liability is asserted acted with 'deliberate intention.'" Edwards v. Stark, 880 S.E.2d 881, 886 (W. Va. 2022) (quoting W. Va. Code § 23-4-2 (2015)) (cleaned up). If an employee establishes a valid deliberate intent claim, the employee may "recover excess damages over the amount received under the workers' compensation scheme." Hunt, 51 F.Supp.3d at 630 (citing Mayles v. Shoney's, Inc., 405 S.E.2d 15, 18 (W. Va. 1990)). The workers' compensation statute allows for two distinct types of deliberate intent claims: (1) a "heightened" deliberate intent claim, which requires the employee to prove that the employer intentionally harmed him or (2) a "five-factor" deliberate intent claim, as plaintiffs allege in this case. See id.

For Mr. Eden's complaint to satisfy the pleading standard, he must plausibly allege that (1) a specific unsafe working condition existed which presented a high degree of risk and a strong probability of serious injury or death, (2) KGPCO had actual knowledge of the specific unsafe working condition and the high degree of risk and strong probability of serious injury or death it presented, (3) the specific unsafe working condition violated a safety statute, rule, or regulation or a commonly accepted and well-known safety standard within the industry, (4) KGPCO knowingly and intentionally exposed Mr. Eden to the specific condition, and (5) that it caused Mr. Eden serious injury or death. See W. Va. Code § 23-4-2 (d)(2)(B).

The court addresses the sufficiency of Mr. Eden's allegations as to each of these elements individually. See, e.g., Black Bear, LLP v. Halsey, Nos. 16-0232 & 16-0249, 2016 WL 7210151, at *5 (W. Va. Dec. 12, 2016) (memorandum opinion) ("[T]he express language of West Virginia Code § 23-4-2(d)(2)(ii)(D) plainly shows that the legislature intended that each and every one of the five elements be proven individually.").

**a. Unsafe Working Condition**

Mr. Eden alleges that an unsafe working condition existed at Frontier's facility because of its alleged mandatory policy to accept shipments under any circumstances, even without a

forklift, and that this presented a risk of serious injury or death to Mr. Eden. See ECF No. 1 at ¶¶ 26-27; ECF No. 45, Ex. A. at ¶ 8. KGPCO argues that Mr. Eden insufficiently alleges this element because KGPCO did not create this unsafe working condition: "The policy that barred refusal of deliveries was [Frontier's] policy, not KGPCO's[,]" and "[t]here are no allegations that KGPCO required [plaintiff] to accept deliveries or that KGPCO removed the forklift from service." ECF No. 34 at 7-8.

The statute, however, does not require the employer to have created the dangerous condition; it requires only that "a specific unsafe working condition existed in the workplace . . . ." W. Va. Code § 23-4-2(d)(2)(B)(i) (emphasis added). The West Virginia Supreme Court of Appeals adheres to the principle that the state legislature through its statutes said "what it meant and meant what it said . . . ." King v. W. Va.'s Choice, Inc., 766 S.E.2d 387, 391 (W. Va. 2014). Had the legislature intended to require that an employer create the unsafe working condition, it would have said so. Indeed, the question of who created the unsafe working condition is relevant only when the employee creates the risk himself. See, e.g., Blevins v. Beckley Magnetite, Inc., 408 S.E.2d 385, 393 (W. Va. 1991) (agreeing that "appellant failed to show a specific unsafe working condition existed, other than the one the appellant created");

see also Master Mech. Insulation, Inc. v. Simmons, 753 S.E.2d 79, 85 (W. Va. 2013) ("[A]n employee cannot create the unsafe working condition that is at the center of his 'deliberate intent' cause of action.").

In this case, Mr. Eden sufficiently alleges that an unsafe working condition existed at Frontier's facility, Mr. Eden's workplace, and that it posed a risk of serious injury or death to him. The fact that Frontier implemented the policy or pulled the forklift from service is immaterial to the existence of the unsafe working condition.

KGPCO's argument about who caused the unsafe working condition is more relevant to the requirement that employers have actual knowledge of the unsafe working condition. The court turns now to that question.

**b. Actual Knowledge**

To establish the actual knowledge element, a plaintiff must show that "the employer, prior to the injury, had actual knowledge of the existence of the specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by the specific unsafe working condition." W. Va. Code § 23-4-2 (d)(2)(B)(ii). Constructive knowledge will not suffice; a plaintiff must prove that the employer actually knew of the specific unsafe working condition:

> This requirement is not satisfied merely by evidence that the employer reasonably should have known of the specific unsafe working condition and of the strong possibility of serious injury or death presented by that condition. Instead, it must be shown that the employer actually possessed such knowledge.

Beckley Magnetite, Inc., 408 S.E.2d at 393. This determination often requires the trier of fact to infer the employer's state of mind from the evidence presented. See FirstEnergy Generation, LLC v. Muto, 832 S.E.2d 58, 63 (W. Va. 2018) (quoting Smith v. Apex Pipeline Serv., Inc., 741 S.E.2d 845, 855 (W. Va. 2013) ("[A] determination of whether an employer had actual knowledge 'requires an interpretation of the employer's state of mind, and must ordinarily be shown by circumstantial evidence, from which conflicting inferences may often reasonably be drawn.'"). This element is difficult to prove: "the actual knowledge requirement 'is a high threshold that cannot be successfully met by speculation and conjecture.'" Id.

In support of this element of his deliberate intent claim, Mr. Eden alleges that he had informed his KGPCO supervisor that (1) he had received unscheduled deliveries at Frontier's facility, ECF No. 1 at ¶ 21, (2) that Frontier had a policy whereby he lacked the discretion to refuse deliveries, id. at ¶ 27, and (3) that Frontier's forklift was unavailable to help him unload the mandatory shipments, ECF No. 45, Ex. A at ¶ 7. It is

from these allegations that Mr. Eden asks the court to infer that KGPCO had actual knowledge of the specific unsafe working condition allegedly presented at the Frontier facility and the strong probability that it could seriously injure or kill him.

KGPCO argues that Mr. Eden fails to adequately allege that it possessed actual knowledge of the allegedly dangerous condition because "[t]he [c]omplaint does not . . . allege or otherwise indicate that any supervisor at KGPCO had 'actual knowledge' that the forklift was out of service . . . [,] [which] prevents Mr. Eden's [c]omplaint from meeting the plausibility threshold established by Twomby/Iqbal [sic] and requires dismissal of his claim against KGPCO." ECF No. 34 at 8.

KGPCO ignores the verified statement, incorporated by reference into the complaint, in which Mr. McIntosh states that from his review of pertinent information and Mr. Eden's representations, "Mr. Eden had notified his supervisor that the forklift was being repaired and was not available for use." ECF No. 45, Ex. A at ¶ 7. Under Rule 10(c) of the Federal Rules of Civil Procedure, "exhibits to the complaint are a part of the complaint . . . ." Fayetteville Inv'r v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991). "In deciding whether a complaint will survive a motion to dismiss, a court evaluates the complaint in its entirety, as well as documents attached or

incorporated into the complaint." E.I. du Pont de Nemours and Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011) (citing Sec'y of State for Defence v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007)). To consider a document attached to a complaint, the document must be "integral to the complaint and authentic." Occupy Columbia v. Haley, 738 F.3d 107, 116 (4th Cir. 2013) (quoting Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009)).

Because Mr. McIntosh's verified statement is integral to the complaint and its authenticity is not in dispute, the court considers this factual statement as an allegation for purposes of this motion to dismiss. See, e.g., Space Tech. Dev. Corp. v. Boeing Co., 209 F. App'x 236, 238 (4th Cir. 2006) ("This Court must also accept as true the facts set forth in the exhibits attached to the complaint.").

With that issue clarified, the court must now decide whether Mr. Eden's allegations support an inference that KGPCO knew of the specific unsafe working condition at the Frontier facility and the risk it posed. As the West Virginia Supreme Court of Appeals has explained, this element inherently requires the fact finder to infer the employer's state of mind and often gives rise to conflicting inferences. This case is no exception; Mr. Eden's allegations create conflicting inferences. On one hand, one could infer from the allegations that even

though KGPCO knew of Frontier's policy and inoperable equipment, it did not know of the specific unsafe condition that the combination caused. On the other hand, one could infer that given KGPCO's knowledge that Mr. Eden could be required to unload large infrastructure materials without the use of a forklift, KGPCO knew that this risked serious bodily injury or death to Mr. Eden. While KCPCO's actual knowledge of the specific unsafe working condition at Frontier's facility may be difficult to prove at a later stage of these proceedings, the court must resolve these competing inferences in Mr. Eden's favor for purposes of this motion.

Mr. Eden sufficiently alleges that KGPCO knew of the specific unsafe working condition at Frontier's facility.

**c. Safety Standards**

In addition to the requirement that an employer have actual knowledge of a specific unsafe working condition, the condition must also violate a safety regulation or other safety standard: A plaintiff must prove that "the specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of the employer." W. Va. Code § 23-4-2(d)(2)(B)(iii). When a plaintiff alleges a violation of a safety regulation, the regulation must (1) specifically apply to the work and working

condition involved (as opposed to a standard generally requiring safe workspaces) and (2) be intended to address the specific hazard presented by the alleged specific unsafe working condition. See W. Va. Code § 23-4-2(d)(2)(B)(iii)(II)(a)-(b). The West Virginia Supreme Court has held that this specificity requirement is satisfied if the regulation (1) imposes a legal duty and (2) is capable of applying to the workplace situation:

> The violation of a statute, rule, regulation or standard is a proper foundation for the element of deliberate intent found at W.Va.Code § 23-4-2(c)(2)(ii)(C) (1994) (Repl.Vol.1998), where such statute, rule, regulation or standard imposes a specifically identifiable duty upon an employer, as opposed to merely expressing a generalized goal, and where the statute, rule, regulation or standard asserted by the employee is capable of application to the specific type of work at issue.

Syl. Pt. 3, in part, McComas v. ACF Indus., LLC, 750 S.E.2d 235 (W. Va. 2013) (quoting Syl. Pt. 3, Ryan v. Clonch Indus., Inc., 219 W.Va. 664 (W. Va. 2006)). Expert testimony may establish the violation of the safety standard. See, e.g., Shoney's Inc., 405 S.E.2d at 22.

Mr. Eden alleges through Mr. McIntosh's verified statement that the specific unsafe working condition violated 29 CFR § 1926.21(b)(2), a federal regulation that requires that "[t]he employer shall instruct each employee in the recognition and avoidance of unsafe conditions and the regulations applicable to

his work environment to control or eliminate any hazards or other exposure to illness or injury." (emphasis added).

KGPCO argues that this constitutes a "general safety standard that applies to all employers, at all times, and under all circumstances" and, therefore, does not impose a specific duty applicable to the specific work at issue, as the statute requires. ECF No. 34 at 9.

This specificity requirement is not, however, as demanding as KGPCO suggests. The requirement demands only that the regulation impose a "specifically identifiable duty" and merely be "capable of application" to the work involved. See, e.g., Reed v. Marfolk Coal Co., LLC, NO. 5:20-cv-00719, 2021 WL 3185995, at *3 (S.D.W. Va. July 26, 2021) ("[The employee] has alleged through his expert's verified statement that [his employer] violated MSHA by failing to train its mine superintendent regarding hazard assessment . . . . The allegation minimally suffices at this juncture to conclude [the employer] failed to train its superintendent in accordance with the MSHA regulation.").

Plaintiffs' regulation identifies the specific duty of the employer: the duty that employees shall instruct employees how to avoid unsafe conditions and of applicable regulations for doing so. See, e.g., Smith v. Metso Paper USA, Inc., No. 1:13CV266, 2014 WL 1404727, at *4 (N.D.W. Va. Apr. 10, 2014)

("By use of the word 'shall', the regulation imposes an affirmative duty on employers[.]"). The regulation is also capable of application to this situation because KGPCO allegedly knew of Frontier's policy that required Mr. Eden to accept all deliveries, even without proper equipment or notice. This gives rise to the plausible inference that had the employer properly instructed Mr. Eden on risk aversion, and possibly his discretion to refuse risky tasks, he could have avoided the unsafe working condition.

The regulation identifies a specific duty and is capable of being applied to this situation. Mr. Eden, therefore, sufficiently alleges this element.

**d. Knowing and Intentional Exposure**

The final disputed issue that the court must address is whether Mr. Eden sufficiently alleges that KGPCO knowingly and intentionally exposed him to the specific unsafe working condition present at Frontier's facility. See W. Va. Code § 23-4-2(d)(2)(B)(iv) ("[T]he person or persons alleged to have actual knowledge under subparagraph (ii) nevertheless intentionally thereafter exposed an employee to the specific unsafe working condition[.]").

"To establish intentional exposure pursuant to [the deliberate intent statute] there 'must be some evidence [ ] that with conscious awareness of the unsafe working condition . . .

an employee was directed to continue working in that same harmful environment.'" Ramey v. Contractor Enters., 693 S.E.2d 789, 796 (2010) (quoting ACF Indus., Inc., 575 S.E.2d at 168).

KGPCO argues that because it did not instruct Mr. Eden to unload this specific delivery, it did not intentionally expose him to the unsafe working condition alleged: "There is no allegation in the [c]omplaint that . . . would establish that KGPCO gave any instruction to Mr. Eden to accept the subject delivery or to unload the reel without the use of a forklift or by attempting to use ramps." ECF No. 34 at 13.

To satisfy this element, however, KGPCO need not have directed Mr. Eden to unload this specific delivery. It needed only to intentionally expose him to the specific unsafe working condition: his obligatory duty to unload dangerous loads without proper equipment or notice. While this element ultimately requires evidence of the employer's "conscious awareness" of the specific unsafe working condition and intentional exposure to it, an inference of this mental state suffices at the pleading stage. Alston v. AT&T Serv., Inc., No.: GJH-18-2529, 2019 WL 670241, at *3 (D. Md. Feb. 19, 2019) (citing Crugher v. Prelesnik, 761 F.3d 610, 617 (6th Cir. 2014) (A plaintiff "must plead sufficient facts to support a plausible inference of the alleged mental state.")).

The fact that KGPCO allegedly knew of the unsafe working condition and that Mr. Eden nonetheless continued his regular duties at the facility supports this inference. See Apex Pipeline Serv., Inc., 741 S.E.2d at 858 (citing Sias v. W-P Coal Co., 408 S.E.2d 321, 327 (W. Va. 1991) ("[T]his element . . . is linked particularly with the actual knowledge element[.]"); Dotson v. Niche Polymer LLC, NO. 2:21-cv-00110, 2022 WL 2292286, at *4 (S.D.W. Va. June 24, 2022) (quoting W-P Coal Co., 408 S.E.2d at 327 ("[T]he fact finder . . . reasonably may infer the intentional exposure if the employer acted with the required specific knowledge . . . and intentionally exposed the employee to the specific unsafe working condition."); Bays v. Kroger Co., No. 2:15-cv-01507, 2016 WL 4402831, at *5 (S.D.W. Va. Aug. 16, 2016) ("[T]he floor fan was in such a place that Bays could likely not perform her regular and expected duties as a customer service manager without coming across it. Yet, despite the existence of the fan and Kroger's knowledge of it, which Bays has properly alleged, Kroger required Bays to continue her regular duties while the floor fan remained in place."); ACF Indus., LLC, 750 S.E.2d at 244 (finding that material issue of fact existed as to whether employer intentionally exposed employee to dangerous condition because employer directed employee to perform a task that necessarily presented a foreseeable danger).

Mr. Eden sufficiently alleges this element because he alleges that he continued his regular duties despite KGPCO's actual knowledge of the specific unsafe working condition.

**e. Causation and Injuries**

Mr. Eden alleges that his exposure to the specific unsafe working condition caused him "severe, permanent, and disabling injuries," including: (1) a significant laceration to his leg, (2) a back injury requiring spinal fusion surgery, (3) injuries to both shoulders, and (4) post-traumatic headaches. ECF No. 1 at ¶¶ 31-32. Ms. Eden alleges that she "has been deprived of the loss of society, companionship, and consortium of her husband." Id. at ¶ 66. KGPCO does not challenge the sufficiency of plaintiffs' allegations as to this element, and the court finds them sufficient.

**IV. Conclusion**

For these reasons, defendant KGPCO Inc.'s motion to dismiss (ECF No. 33) is **DENIED.** The Clerk is directed to send a copy of this Memorandum Opinion to counsel of record.

**IT IS SO ORDERED** this 1st day of September, 2023.

ENTER:

David A. Faber
Senior United States District Judge